SHADOW LAWN SAVINGS AND LOAN ASSOCIATION, PLAIN-TIFF-APPELLANT, v. JOHN S. TRUHAN, INDIVIDUALLY, AND FELLOWS, READ & WEBER, INC., DEFENDANTS-RE-SPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 1, 1983—Decided December 1, 1983.

Before Judges MICHELS, KING and DREIER.

*Stokes & Throckmorton,* attorneys for appellant (*Edward C. Stokes,* III, on the brief).

*Bathgate, Wegener, Wouters & Neumann,* attorneys for respondents (*William J. Wolf,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

This case raises a novel question in New Jersey law. If a lender receives property in excess of the value of the indebtedness in satisfaction of the loan, but has been injured by a third-party in a dollar amount less than the premium it received

when it accepted the property in satisfaction, is the third-party liable to the lender? We hold that there is no such liability where the lender has been made whole in the transaction.

Plaintiff has claimed in this action that defendants defrauded it by issuing their engineers' certificate as to the completion of various on-site and off-site subdivision improvements. Plaintiff had agreed to advance $850,000 to Investors Development Company (Investors), the owner of property in Manalpan Township, Monmouth County. The loan was secured by a mortgage of April 11, 1979 which incorporated a development agreement providing for an initial advance of $232,050 and then a disbursement schedule specifying various sums on completion of excavation, grading and filling, sanitary sewers, storm-drainage system, water supply system, underground electric system, concrete curbs, sidewalks and aprons, street construction, street lights and signs, landscaping, and, finally, on acceptance of the streets by the township. On November 21, 1979, a second mortgage was granted by plaintiff in the principal amount of $787,000. Although there was a showing that plaintiff's personnel also made inspections of the premises, plaintiff claims that defendants, the individual and corporate engineers retained to inspect the job, issued certificates on which plaintiff relied in making its disbursements.[1] We must accept at this juncture plaintiff's allegation that it advanced $55,000 more than it would have, had accurate certificates been supplied by defendants, and it is for

---

[1]Some of the improvements were underground and therefore plaintiff may well have been misled by an erroneous certificate of completion; but as to matters such as the curbing where the certificates stated 100% completion and only 23.2% actually had been completed or the roadway where 50% was certified as against 5.6% actual completion, there would have been a serious issue at trial as to plaintiff's reliance, if its personnel actually inspected. Given our findings concerning damages, however, this issue is moot. *Cf. Nat'l Prem. Budget Plan Corp. v. Nat'l Fire Ins. Co.*, 97 *N.J.Super.* 149, 210–211 (Law Div.1967), aff'd 106 *N.J.Super.* 238 (App.Div.1969), certif. den. 54 *N.J.* 515 (1969).

this $55,000 that plaintiff makes claim against defendants on the ground of fraud.

■ We have no problem reasoning by analogy from *Rosenblum v. Adler,* 93 *N.J.* 324, 334–353 (1983), that a professional who issues a certificate upon which a third-party is expected to rely in making disbursements will be responsible for inaccuracies in this certificate. This is so whether the theory is one of fraud or contractual undertaking. As noted in *Rosenblum,* there may be "recovery of damages for economic loss or injury sustained as a consequence of that reliance." 93 *N.J.* at 334. We see no valid distinction between the accountant's responsibility in *Rosenblum* and the engineer's responsibility here.

If the claim is founded on fraud, the showing must be of "a material representation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely thereon, and he does so rely to his damage." *Foont-Freedenfeld v. Electro-Protective,* 126 *N.J.Super.* 254, 257 (App.Div.1973), aff'd o.b. 64 *N.J.* 197 (1974).

■ The similarity between the two rules is the requirement of damages to the plaintiff and it is in this context that we must examine plaintiff's role with respect to defendants. When the project became subject to economic distress, Investors sought the aid of the Bankruptcy Court. Plaintiff on April 8, 1980, was granted leave to accept a deed to one tract in lieu of foreclosure, in exchange for its extinguishing its loan balance which then totalled $346,691. Shortly thereafter, on August 21, 1980, plaintiff conveyed this tract to Coastal Group Inc. for a consideration of $548,500, realizing a net profit of $201,809.[2]

---

[2]We are not informed as to what valuation plaintiff put on this tract in its application to the Bankruptcy Court or the basis upon which the Bankruptcy Court permitted the deed in lieu of foreclosure. Given this 37% discrepency in the loan balance and true worth of the property, the windfall was apparently at the expense of Investors' other creditors.

The bank claims that as the owner of the property it eventually profited $55,000 less than it would have, had defendant's certification been correct. What plaintiff overlooks is that defendant did not certify completion to plaintiff as the owner of the property, but as a lender. As a lender, plaintiff was entitled to the repayment of its loan in accordance with its agreement with Investors. If it received payment by way of money or property of a value less than the balance due, its claim against defendants might have been viable. As the trial judge correctly noted in his opinion, *Security Corp. v. Lehman Associates, Inc.,* 108 *N.J.Super.* 137, 141 (App.Div.1970) stated:

> ... Plaintiff is entitled to compensation for every loss or injury directly or proximately resulting from defendants' wrongful acts. 'An injured person is entitled to be made whole.' *Patusco v. Prince Macaroni, Inc.,* 50 *N.J.* 365, 368 (1967); *cf. 525 Main Street Corp. v. Eagle Roofing Co.,* 34 *N.J.* 251, 254 (1961). See generally 22 *Am.Jur.2d, Damages,* 'IV. Measure and Elements of Compensatory Damages,' § 45, at 71–72 (1965).

As noted earlier, under the theories of both certification and fraud, damages must be proven. As a *lender* plaintiff suffered no damages, and the trial judge correctly dismissed the complaint. The trial judge focused on the voluntary acceptance of the property in lieu of foreclosure in determining that there was no loss, but such action is not conclusive. Often, a lender will so accept property having a value far less than the amount of the indebtedness in order to save both sides the substantial cost of completing a foreclosure action, with its attendant attorney's fees, court costs, sheriff's commissions, etc. A court should examine what a plaintiff has actually received and not the method by which the property was secured. Here, however, as we view this transaction, plaintiff in its capacity as a lender suffered no loss on account of defendants' actions.

The judgment of the Law Division is affirmed.